# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cv-61813-BLOOM/Valle

SIAVASH AMANIEH,

      Plaintiff,

v.

JORGE MAURA, and
CITY OF FORT LAUDERDALE,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Jorge Maura and the City of Fort Lauderdale's (collectively "Defendants") Motion for Final Summary Judgment, ECF No. [28] the "Motion"). The Court has carefully reviewed the Motion, the record, all supporting filings,[1] the exhibits attached thereto, and is otherwise fully advised in the premises. For the reasons that follow, Defendants' Motion is granted.

---

[1] Plaintiff did not file a Response in Opposition to Defendants' Motion, ECF No. [28], or a Response to Defendants' Statement of Material Facts, ECF No. [29]. His Responses were originally due by April 19, 2017. Having failed to file anything by the deadline, the Court ordered Plaintiff to file his Response no later than April 24, 2017. *See* ECF No. [33]. In the Order, Plaintiff was warned that "[f]ailure to respond by the above deadline may result in Defendant's Motion being granted without further notice." *Id.* As of the date of this Order, Plaintiff has yet to file a Response to the Motion or to Defendants' Statement of Material Facts. The Court also notes that, according to Defendants' Certificate of Service, Defendants served Plaintiff with the Motion and the Statement of Material Facts via e-mail to Sam13sia@aol.com. *See* ECF No. [28] at 12; ECF No. [29] at 5. In addition, the Clerk of Court separately delivered notice of these filings via mail at Plaintiff's address of record. Therefore, Plaintiff's failure to respond is not due to lack of notice. The Court also issued an Order Providing Instructions to *Pro Se* Litigants in which Plaintiff was informed that, if he wishes to oppose a motion, he must do so in writing within the time periods provided by the rules of procedure. *See* ECF No. [27] at 2. Plaintiff was sufficiently made aware of the requirement to file a timely response – a response that was due more than two weeks ago - and he chose to forego that opportunity.

## I. BACKGROUND[2]

This case involves an investigation into a building code violation initiated by Robert J. Masula ("Masula"), a Building Inspector and Code Officer for the City of Fort Lauderdale ("City"), involving a property located at 3233 N.E. 34th Street Unit 1614 (the "property").  *See* ECF No. [31], Ex. 3.  On November 5, 2014, Masula visited the property and found that the kitchen and bathroom were under demolition without the necessary permits or inspections.  *Id.* at Ex. 3.  For that reason, Masula immediately issued a stop work order.  *Id.*  Masula maintained a log where he documented his investigation.  *Id.* at Ex. 14.  In that log, he documented that Mary Varvarigos owned the property, but her son Dean Varvarigos, who claimed to have a power of attorney for his mother, was overseeing the renovation project.  *Id.*  Mr. Varvarigos advised Masula that Plaintiff was the main person working on the project at the property along with a man named Francisco.  *Id.*  Masula made numerous efforts to speak with Plaintiff and, on January 22, 2015, Plaintiff and Masula met briefly.  *Id.*  On April 14, 2015, Plaintiff returned to meet with Masula and Detective Jorge Maura ("Maura").  *Id.*  Maura is employed by the City as a police officer and has been assigned to the code enforcement division for the last eight years. *Id.* at 15.[3]  During this meeting, Plaintiff informed Masula and Maura that he prepared a contract to perform work on the property and he hired Francisco to work on the project.  *Id.* at 53; Ex. 14. Plaintiff also admitted that he was not a licensed contractor.  *Id.* at Ex. 1; ECF No. [30] at 31.

---

[2] Local Rule 56.1(b) provides that "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record."  *See* S.D. Fla. L.R. 56.1(b).  To date, Plaintiff has not responded or otherwise controverted Defendants' Statement of Material Facts.  Thus, to the extent that record evidence supports Defendants' Statement of Material Facts, these facts are deemed admitted and are undisputed.
[3] The pinpoint citations refer to the page of the applicable deposition transcript, not the CM-ECF page number.

Based on Plaintiff's admissions to Maura that he had entered into a written contract with Mr. Varvarigos to remodel the property, that he hired at least one worker to assist in the demolition of the property without the required permits, and that he was not a licensed contractor, Maura issued a Notice to Appear to Plaintiff.[4]  *See* ECF No. [31] at 22, Ex. 1.  The Notice to Appear cited Plaintiff for violations of working without a permit and working as an unlicensed contractor.  *Id.* at Ex. 1.  During their meeting, Plaintiff was not in Maura's custody. *Id.* at P. 40-41.  Plaintiff could leave the meeting and decline to sign the Notice to Appear without a resulting arrest.  *Id.* at 43, 45.  The municipal prosecutor eventually charged Plaintiff under a Municipal Information with "Alteration without Permit FBC 104.1" and "Unlawful Contracting MO 16-1 (17)."  *See* ECF No. [29] at 7.  More specifically, Plaintiff was charged with performing demolition and remodeling work without filing an application and obtaining a permit in violation of Florida Building Code 105.1[5] and Municipal Ordinance 16-1 and with engaging in a business or acting in a capacity of a contractor without being duly registered or certified in violation of Municipal Ordinance 16-1 and Florida Statute § 489.127(1)(f).  *Id.*  On September 4, 2015, the Disposition Order reflects the charges were *nolle pros*.  *See* ECF No. [31] at Ex. 16.

---

[4] In their Statement of Material Facts, Defendants also claimed that Maura's arrest was based on Masula's investigation and Masula's Witness Affidavit.  The Court's independent review of Maura's deposition testimony reveals otherwise.  Maura testified that he is aware that Masula brought his investigatory file to the meeting with Plaintiff, but he did not remember seeing any part of the file.  *See* ECF No. [31] at 12. He also believes he spoke with Masula about scheduling the meeting on a specific date, but did not recall whether Masula shared any specific case-related information with him in advance of the meeting.  *Id.* at 51.  Thus, Maura did not testify that he relied on any information from Masula's investigation.  His testimony suggests he did not have any specific information from Masula, much less that he relied on that information.  Similarly, Maura testified that he received Masula's affidavit within one or two weeks of issuing the Notice to Appear.  *Id.* at 23.  Therefore, when issuing the Notice to Appear, Maura could not have possibly relied on this affidavit as he had not yet received it.

[5] The Municipal Information's reference to Florida Building Code 104.1 appears to be a typographical error as the corresponding provision of the Florida Building Code is 105.1.

After the charges were dropped, Plaintiff filed a Complaint against Maura and the City. *See* ECF No. [1]. Count I asserts a claim against Maura individually under 42 U.S.C. § 1983 for violating his rights under the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure. *Id.* All remaining claims are pled under state law for false arrest/false imprisonment against the City in Count II, false arrest/false imprisonment against Maura in Count III, and malicious prosecution against Maura in Count IV. *Id.* Defendants' Motion followed. *See* ECF No. [28].

## II.    LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130,

1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III.   DISCUSSION

Defendants argue that Maura is entitled to summary judgment on grounds of qualified immunity with respect to Plaintiff's § 1983 claim asserting violations of the Fourth and Fourteenth Amendments because there was probable cause to believe that Plaintiff violated the Florida Building Code and the municipal ordinance. Similarly, Defendants argue that the

existence of probable cause is also dispositive of Plaintiff's false imprisonment and malicious prosecution claims. The Court agrees.

### A. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 806; *see also Jackson v. Humphrey*, 776 F.3d 1232, 1241-42 (11th Cir. 2015) ("The purpose for qualified immunity is to permit officials to act without fear of harassing litigation as long as they can reasonably anticipate before they act whether their conduct will expose them to liability."). The doctrine "'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). "Qualified immunity is an immunity from suit rather than a mere defense from liability." *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Kingsland*, 382 F.3d at 1232 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the

scope of his discretionary authority.") (citation omitted). Here, it is undisputed that Maura was acting in his discretionary capacity when he issued the Notice to Appear. Once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his or her discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the officers violated a constitutional right; and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). "Additionally, the standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs." *Jackson*, 206 F.3d at 1165 (citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir.1990)). "Thus, a police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred." *Id.* (citing *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir. 1990)). In this case, Plaintiff has not filed a Response, despite ample opportunity to do so, thereby failing to demonstrate a violation of a clearly established constitutional right. Nonetheless, the Court will independently review the record evidence and analyze whether Maura violated Plaintiff's constitutional rights.

### 1. Fourth Amendment Violation

Count I of the Complaint alleges that Maura caused Plaintiff's seizure in the absence of probable cause or, alternatively, that he caused Plaintiff's temporary detention in the absence of reasonable suspicion. *See* ECF No. [1] at 5. It is this conduct that Plaintiff alleges violated his Fourth and Fourteenth Amendment rights. *Id.* From the outset, the Court finds that Plaintiff has not demonstrated a seizure of his person. The Eleventh Circuit has rejected the notion that the

issuance of a Notice to Appear is, in effect, an arrest. *Youngblood v. Florida Dep't of Health*, 224 Fed. App'x 909, 914-15 (11th Cir. March 28, 2007) (granting summary judgment on unlawful search and seizure claims because the Notice to Appear did not "seize" the plaintiff and only required that he appear in court at a later date). "A person is 'seized' for Fourth Amendment purposes only if 'a reasonable person would have believed that he was not free to leave.'" *Id.* at 915 (quoting *U.S. v. Mendenhall*, 446 U.S. 544 (1980)). It is undisputed that Plaintiff was never arrested and was only issued a Notice to Appear. The notice did not even require that Plaintiff appear in court on a date certain – only that he appear on a future undetermined date and time. Further, Maura testified that all individuals who met with him pertaining to this investigation, including Plaintiff, were not in his custody, were free to leave the meeting, and could refuse to sign the notice without a resulting arrest. *See* ECF No. [31] at 40-41, 43, and 45. Plaintiff has not come forward with any evidence to suggest otherwise, failing to satisfy his burden to prove that he was ever "seized" in violation of his constitutional rights.

### 2. *Probable Cause*

An individual's right to be free from unreasonable seizures under the Fourth Amendment is violated when a law-enforcement officer arrests the individual without probable cause. *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (citations and internal quotation marks omitted). An officer has probable cause to arrest when the arrest is "objectively reasonable based on the totality of the circumstances." *Id.* The officer is not required, however, "to prove every element of a crime

before making an arrest." *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007). The existence of probable cause is an "absolute bar" to an action for false arrest under § 1983. *Myers*, 713 F.3d at 1328 (citing *Kingsland*, 382 F.3d at 1226). When probable cause is the key issue, "all that is required for qualified immunity to be applicable to an arresting officer is 'arguable probable cause to believe that a person is committing a particular public offense.'" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998)).

Plaintiff was charged with violating Florida Building Code 105.1 and Florida Statute § 489.127(1)(4).[6] Florida Building Code 105.1 states, in relevant part, that:

> Any owner or authorized agent who intends to construct, enlarge, alter, repair move, demolish, or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any impact-resistant coverings, electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the *building official* and obtain the required *permit*.

As to § 489.127(1)(4), it states that no person shall:

> Engage in the business or act in the capacity of a contractor or advertise himself or herself or a business organization as available to engage in the business or act in the capacity of a contractor without being duly registered or certified.

Here, the Court must determine whether Maura had at least arguable probable cause to believe Plaintiff violated these provisions of the Florida Building Code and the Florida Statutes when he issued Plaintiff a Notice to Appear. Maura based his decision on (1) Plaintiff's admissions that he had entered into a written contract with Mr. Varvarigos to remodel the property, (2) Plaintiff's admission that he hired at least one worker to assist in the demolition of the property without the required permits, and (3) Plaintiff's admission that he was not a licensed

---

[6] The Municipal Information, which was the charging document, also references Fort Lauderdale Municipal Ordinance 16-1. It provides in relevant part: "State misdemeanor. It shall be unlawful for any person to commit, within the corporate limits of the city, any act which is or shall be recognized by the laws of the state as a misdemeanor."

contractor.  *See* ECF No. [31] at 22, Ex. 1.  Plaintiff has not presented any evidence to controvert Maura's version of events.  Based on these undisputed facts, the Court finds that reasonable officers under the same circumstances and possessing the same knowledge as Maura would believe that Plaintiff violated Florida Building Code 105.1 when he hired at least one person to perform demolition work at the property without the required permits.  Likewise, the Court finds that Maura had probable cause to believe that Plaintiff, who admitted to entering into a contract with Mr. Varvarigos to remodel the property even though he was not a licensed contractor, did engage in the capacity of a contractor without being duly certified as required by § 489.127(1)(4).  Because the existence of probable cause is an absolute bar to a § 1983 claim, the Court finds that Maura has qualified immunity.

### B.  False Arrest/False Imprisonment Claims

In Counts II and III, Plaintiff asserts false arrest/false imprisonment claims against the City and Maura.  Under Florida law, the tort of false imprisonment requires an unlawful restraint on an individual against his or her will.  *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (quoting *Escambia Cty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. 5th DCA 1996)).  A plaintiff asserting a false imprisonment claim must prove "imprisonment contrary to his [or her] will and the unlawfulness of the detention."  *Id.* (quoting *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1987)).  Once the plaintiff establishes a detention by one without authority to detain, the defendant may present evidence of the lawfulness of the detention, including evidence of probable cause.  *Id.* (citing *Rivers*, 698 So. 2d at 1331).  In this Circuit, "the standard for determining the existence of probable cause is the same under both Florida and federal law – whether a 'reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.'"  *Rankin v. Evans*,

133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *U.S. v. Ullrich*, 580 F.2d 765, 769 (5th Cir. 1978)) (alterations in original).[7]  For the reasons explained in Section III(A) *supra*, the Court finds there is no evidence that Plaintiff was unlawfully restrained against his will. Moreover, even if there was such record evidence, Maura had probable cause to believe Plaintiff violated Florida Building Code 105.1 and Florida Statute § 489.127(1)(4).   Maura, therefore, had probable cause to issue the Notice to Appear to Plaintiff.

### C.  Malicious Prosecution

Finally, in Count IV, Plaintiff asserts a malicious prosecution claim under state law against Maura.  To prevail on a claim of malicious prosecution under Florida law, a plaintiff must establish the following six elements:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) **there was an absence of probable cause for the original proceeding**; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Kingsland*, 382 F.3d at 1234 (citing *Durkin v. Davis,* 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002)) (emphasis added).

In order for Count IV to survive summary judgment, Plaintiff must demonstrate that Maura did not have probable cause to issue the Notice to Appear, which led to the eventual filing of the Municipal Information by the prosecutor.  For the reasons explained in Section III(A) *supra*, the Court concludes that Maura had probable cause.  This finding is fatal to Plaintiff's malicious prosecution claim.

---

[7] All decisions issued by the former Fifth Circuit prior to October 1, 1981, have been adopted as binding precedent for the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ).

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment, **ECF No. [28]**, is **GRANTED**.  To the extent not otherwise disposed of, all pending motions are **DENIED** as moot.  Final Judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida this 10th day of May, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Siavash Amanieh
PO Box 212523
West Palm Beach, FL 33421
PRO SE